The appeal herein is premature, and therefore is dismissed.

---

(70 South. 573)

No. 20356.

BROOKS v. BANK OF ACADIA.

(Jan. 10, 1916.)

*(Syllabus by the Court.)*

1. LIBEL AND SLANDER ⬤=51—ACTIONABLE WORDS—DEFAMATORY JUDICIAL ALLEGATIONS.

Defamatory judicial allegations are not libelous and actionable, unless shown to have been false, malicious, and without probable cause.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. ⬤=51.]

2. LIBEL AND SLANDER ⬤=38—ACTIONABLE WORDS—STATEMENTS OF ATTORNEY.

A client is not responsible for slanderous or libelous words uttered by his attorney at law; but attorneys themselves are responsible for slanderous or libelous words uttered by them. Rev. St. 1870, § 123.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117–123; Dec. Dig. ⬤= 38.]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by George Howard Brooks against the Bank of Acadia. From judgment for defendant, plaintiff appeals. Affirmed.

Smith & Carmouche, of Crowley, for appellant. Medlenka & Bruner, of Crowley, for appellee.

LAND, J. This is a suit for $25,000 damages for alleged libelous allegations in the petition filed in the suit of Bank of Acadia v. John Abshire, Jr., Joseph Louis Abshire, and George Howard Brooks, No. 3629 of the docket of the district court in and for the parish of Acadia, and for alleged libelous statements contained in the brief of counsel for the Bank of Acadia filed in the same suit.

Suit No. 3629 was a sequel to suit No. 3592 between the same parties in the same court.

The first suit of the Bank of Acadia was to recover judgment against John Abshire, Jr., on his note, for $281, with interest, and to set aside as simulated, or fraudulent, a certain sale by John Abshire, Jr., to his son, John Louis Abshire, of a tract of land containing 53 acres, for the purported cash price of $1,530, and a certain sale of the same property by John Louis Abshire to George Edward Brooks, for the purported cash consideration of $800. The petition contained the usual allegations of fraud and injury.

Brooks, in his answer, pleaded that he was a purchaser in good faith, and at the time had no knowledge of any debt due by John Abshire, Jr., to the Bank of Acadia, or of his alleged insolvency.

The case was tried, and the judge found that the sale from John Abshire to his son was a fraudulent simulation, but that the purchase by Brooks was made in good faith and for a valuable consideration. The bank appealed to the Court of Appeals, which affirmed the judgments for written reasons assigned. The court found that Brooks had not paid $800 in cash, as stated in the act of sale, but had verbally assumed a mortgage for $465, given his check for $130, and made his personal note for the balance. After commenting on the unusual character of his

transaction, the court said that the record failed to show that the loose method· followed was resorted to for the purpose of ·defrauding the bank.

The court further said:

"It is true that J. L. Abshire remained with his father in possession, but this is explained by the fact that Brooks was in business and had purchased with a view of speculation on his purpose. ✳ ✳ ✳ This presumption of fraud, which results from the possession of the vendor, is completely removed by the facts and circumstances of the case, which show that Brooks was an honest purchaser for value, and that he did not have the remotest connection with any frauds, if any were intended by the Abshires."

The continued possession of the premises by Brooks' vendor created a prima facie presumption of simulation, and the fact that the price was not paid as stated in the act ·of sale was well calculated to create a sus·picion of the reality and good faith of the ·transaction. Hence there was·probable cause for the allegations of simulation and fraud in the petition filed in the first suit.

But the plaintiff in the present suit bases his action for damages for libel on the petition and brief filed by the bank in the second suit.

The purpose of that suit as against Brooks, as shown by the prayer of the petition, was to have the transfer decreed a "pignorative contract," or to retake the property, on the ground that the value thereof exceeded by one-fifth the price or consideration, as provided in article 1981 of the Civil Code.

The petition alleges that:

"The said consideration of $800 was never paid, part represented an indebtedness due by said John Abshire, Jr., to said Brooks and part was fictitious, the same being a pignorative contract, the said transfer being conceived and perfected to secure the said Brooks and to place the property out of the reach of petitioner and ·other creditors of said Abshire, Jr."

The petition alleges that the said John Abshire, Jr., was, at the time, insolvent to the knowledge of his son and the said Brooks; that the said transactions were resorted to

and perfected for the special purpose of placing the said property of Abshire, Jr., out of the reach of his creditors, and the petitioner in particular; that the said Abshire, Jr., owned no other property subject to execution, "and that all the said parties acted in fraud and bad faith and for the purpose of giving the said Brooks a preference."

Defendant pleaded the judgment in the first suit as res judicata.

This plea was overruled in the district court, and judgment was rendered annulling the transfer to Brooks, and giving the plaintiff the right to retake the property upon paying to Brooks the price and consideration paid, with 5 per cent. interest from April 7, 1911, until date of the decree.

The Court of Appeals reversed this judgment, and sustained the plea of res judicata, holding ·that the right to revoke the sale as a pignorative contract, or to retake the property, were involved, and should have been urged, in the first suit. The Court of Appeals did not pass upon the merits of the case.

On the trial of the present case, the plaintiff offered in evidence the records of the two previous suits, and brief filed by defendants' counsel therein. Plaintiff also offered in evidence the records of two subsequent suits brought by the bank against Brooks on notes of the latter. The plaintiff then rested, apparently relying on said records to make out his case.

Defendant offered the testimony of several witnesses taken in the first suit of the bank against the Abshires and Brooks, but the same, on the objection of the plaintiff herein, was ruled out as immaterial and irrelevant. This was error, as the said evidence was admissible for the purpose of proving probable cause for the institution of the second suit. From the evidence incidentally adduced on the trial of the first suit, counsel for the bank was induced to believe that the

transfer from Abshire to Brooks was pig-norative in character. The same counsel was of opinion that this particular issue had not been concluded by the judgment of the Court of Appeals.

This mistake of counsel for the bank was one of law, and in no wise affected his bona fides, or that of his client. It may be noted that counsel for Brooks on the trial of the first suit objected to evidence to show that transfer was a mortgage, on the ground that no such issue was tendered by the allegations of the petition. It may also be noted that on the trial of the second suit the district judge held that the issue of mortgage vel non was not concluded by the judgment. The Court of Appeals held otherwise, but this fact does not tend to show that counsel for the bank was not honest and conscientious in entertaining the contrary opinion.

Advice of counsel, even though erroneous, on questions of law, when accepted and acted on by the client in good faith, is a shield against charges of malice and bad faith.

The second suit was not decided on its merits by the Court of Appeals. Hence the question of probable cause for its institution is an open question.

The salient facts are that John Abshire made a sham sale to his son, to defraud his creditors; that when a wagon and team on the premises were seized under an execution on a judgment against the father, the son transferred the property to Brooks, for the price of $800, purporting to be paid in cash; that in fact only $130 was paid in cash, and the money was used in paying the judgment against John Abshire; that the balance of $670 was never paid either to John Abshire or his son. There was a special mortgage on the property for $465, with accrued interest. Brooks testified that, as a part of the price, he verbally promised to pay said mortgage debt. But he never paid said debt in whole or in part, and during the pendency of the second suit, the said mortgage was fore-closed, and the property was adjudicated to Brooks for $1,202 cash.

Dore, a witness on the first trial, testi-fied that he as the representative of his fa-ther, a creditor of John Abshire, called on the Abshires after the seizure made by La-garde, and that both of them insisted that the sale was a mortgage to cover their in-debtedness to Brooks and future advances. Lagarde, another witness on the first trial, testified that after he had caused the seiz-ure of a horse and buggy on the premises, John Abshire told him that he would get money from Brooks to satisfy the judgment and costs, and that Brooks told him that John Abshire owed both of them, and that he (Brooks) would come to Abbeville and "fix up things"; that Brooks came the next day, and a day or two thereafter, John Abshire went to the office of the justice of the peace and satisfied the execution.

On Brooks' theory the sum of $800 repre-senting the price of the sale was made up of cash, $130, note, $200, and his assumpsit of the mortgage debt of $465, or a total of $795. In other words Brooks treated his unsecured note, and his verbal assumpsit, as so much cash paid to the Abshires. As Brooks did not pay the mortgage debt, we cannot per-ceive how his verbal assumpsit of this debt inured in any way to the benefit or advan-tage of the Abshires.

On the whole, we are not prepared to say that the plaintiff had no probable cause for suing to annul the purported contract of sale as pignorative, and as an unjust preference of the defendant over the plaintiff and other creditors.

The plaintiff necessarily had to allege fraud and injury in its petition.

As far as the charge of malice is con-cerned, it is not supported by the evidence. The second suit did not interrupt the busi-ness relations between the plaintiff and the

defendant, and, as a matter of fact, several months after it was filed the plaintiff made one or more loans to the defendant, secured as usual by collaterals. Subsequently the plaintiff sued the defendant on these obligations, after their maturity, and after the failure of the defendant to pay the same in the usual course of business. The argument that such suits implied malice needs no refutation.

[1, 2] The law applicable to cases of this kind is correctly and tersely stated in the syllabus of Lescale v. Joseph Schwartz Co., 118 La. 718, 43 South. 385, as follows:

"Defamatory judicial allegations are not libelous and actionable, unless shown to have been false, malicious, and without probable cause."

As to the statements in brief of counsel, R. S. 1870, § 123, reads as follows:

"No client or other person shall be held liable or responsible for any slanderous or libelous words uttered by his attorney at law; but attorneys shall be themselves liable * * * for any slanderous or libelous words uttered by them."

Judgment affirmed.